## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**NCF FREEDOM, INC.**, a Florida
not-for-profit corporation, **SARAH
HERNANDEZ**, **MARIBETH CLARK**,
**KIM ANDERSON**, **SARA J. ENGELS**,
**CARLTON LEFLER**, and
**SHELBY A. NAGLE**,

      Plaintiffs,

v.                                                                    Case No. 4:23-cv-360-MW-MAF

**MANNY DIAZ, JR.**, in his official
capacity as the Commissioner of the
Florida State Board of Education and
member of the Florida Board of
Governors, et al.,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT AND PERMANENT INJUNCTION AND SUPPORTING MEMORANDUM

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move for dismissal of Plaintiffs' Complaint for Declaratory Judgment and Permanent Injunction (the "Complaint").  In support of this motion, Defendants state as follows:

## INTRODUCTION

The existence of a case or controversy under Article III, Section 2 of the United States Constitution is a "bedrock requirement" for federal jurisdiction.  *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020).  Among the court's

jurisdictional mandates, "standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990) (quoting *City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)).

Plaintiffs' impassioned opposition to SB 266 fails to establish standing. That is, none of the plaintiffs have alleged facts showing that they will actually be injured by SB 266 in a manner sufficient for standing.  First, none of the Plaintiffs allege facts indicating that they intend to engage in speech violative of SB 266 and the declarations Plaintiffs submitted in support of their Motion for Preliminary Injunction do not provide sufficient factual material to make up for the Complaint's deficiencies.  Second, the law is directed and enforced at the university level, not on a professor or student basis, and therefore, does not target their speech.  Finally, because SB 266 is not enforced against Plaintiffs, they cannot demonstrate a causal connection between their claimed injuries and SB 266, or that their injuries would be redressed by a favorable decision in this case.  It follows, Plaintiffs cannot establish the most important jurisdictional requirement to maintain this suit: standing.

Moreover, beyond Plaintiffs' inability to achieve standing in this Court, Plaintiffs do not state claims upon which relief can be granted.  Therefore, Defendants move to dismiss Plaintiffs' Complaint on the basis of Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim, respectively.

## FACTS

**1.  Florida Enacts Senate Bill 266.**

On May 3, 2023, the Florida Legislature passed Senate Bill 266, Ch. 2023-82, Laws of Florida, titled "Higher Education" ("SB 266" or the "Act"), which imposed numerous reforms to Florida's public post-secondary educational institutions.  Ch. 2023-82, Laws of Fla.  The Governor signed SB 266 into law on May 15, 2023, and it became effective on July 1, 2023.  *Id.* § 13.

The law imposes new duties on the Board of Governors to periodically review the academic programs of each university and direct each university regarding any programs with certain speculative or discriminatory curriculum, such as curriculum that violates the Florida Educational Equity Act, § 1000.05, Florida Statutes ("FEEA")—a non-discrimination statute—or curriculum that is "based on theories that systemic racism, sexism, oppression, and privilege are inherent in the institutions of the United States and were created to maintain social, political, and economic inequities."  § 1, Ch. 2023-82, Laws of Fla. (codified at § 1001.706(5)(a), Fla. Stat. (2023)) (the "Periodic Review Provisions").

SB 266 also prohibits certain expenditures using state or federal funds (the "Funding Provisions"). § 4, Ch. 2023-82, Laws of Fla. (codified at § 1004.06, Fla. Stat. (2023)).  These Funding Provisions restrict state universities from expending any state or federal funds "to promote, support, or maintain any programs or campus activities that (a) [v]iolate [the FEEA]; or (b) [a]dvocate for diversity, equity, and inclusion, or

3

promote or engage in political or social activism." § 1004.06(2), Fla. Stat. (2023).  The

Board of Governors is tasked with adopting regulations to implement the Funding

Provisions, including by defining certain phrases like "diversity, equity, and inclusion"

and "political or social activism." § 1004.06(2), (4), Fla. Stat. (2023).

The law grants exceptions to the Funding Provisions.  First, student-led

organizations whose activities would otherwise run afoul of these Funding Provisions

are still entitled to receive student fees and to use university facilities, so long as the

allocation of those fees and the use of university facilities are accomplished pursuant to

written policies or regulations of the university.  § 1004.06(2), Fla. Stat. (2023).  Second,

the Funding Provisions do not prohibit

> programs, campus activities, or functions required for compliance with
> general or federal laws or regulations; for obtaining or retaining
> institutional or discipline-specific accreditation . . . ; or for access
> programs for military veterans, Pell Grant recipients, first generation
> college students, nontraditional students, '2+2' transfer students from the
> Florida College System, students from low-income families, or students
> with unique abilities.

§ 1004.06(3), Fla. Stat. (2023).

Finally, SB 266 alters the general education course requirements at all state

universities (the "General Education Provisions").  §§ 9-10, Ch. 2023-82, Laws of Fla.

(codified at §§ 1007.25(3), 1007.55, Fla. Stat. (2023)).  Section 9 of the bill amends

§ 1007.25, Florida Statutes, and provides,

> General education core courses may not distort significant historical
> events or include a curriculum that teaches identity politics, violates [the
> FEEA], or is based on theories that systemic racism, sexism, oppression,

4

and privilege are inherent in the institutions of the United States and were created to maintain social, political, and economic inequities.

§ 1007.25(c), Fla. Stat. (2023).   Section 10 creates § 1007.55, Florida Statutes, and provides,

> The Legislature finds it necessary to ensure that every undergraduate student of a Florida public postsecondary educational institution graduates as an informed citizen through participation in rigorous general education courses that promote and preserve the constitutional republic through traditional, historically accurate, and high-quality coursework. General education courses should provide broad foundational knowledge to help students develop intellectual skills and habits that enable them to become more effective and lifelong learners. Courses with a curriculum based on unproven, speculative, or exploratory content are best suited as elective or specific program prerequisite credit, not general education credit.

§ 1007.55(1), Fla. Stat. (2023).  The trustees of each university must annually review and approve the general education courses at their university to ensure compliance with these provisions.   § 1007.55(2), Fla. Stat. (2023).   The Board of Governors then approves or rejects the list of general education courses submitted by each state university.  § 1007.55(4), Fla. Stat. (2023).  If a state university fails to comply with the General Education Provisions, it is not eligible to receive certain performance-based funding.  § 1007.55(5), Fla. Stat. (2023).

## 2.  Plaintiffs Challenge SB 266, Claiming Violations of Their Constitutional Rights.

Plaintiffs are three New College professors, three New College students, and a non-profit that purports to champion academic freedom.  *See* ECF No. 1.  On August 14, 2023, they filed their Complaint, arguing that SB 266 violates their rights under the

First Amendment, *id.* ¶¶ 99-124, and Equal Protection Clauses of the Fourteenth Amendment, *id.* ¶¶ 163-75. The Complaint also asserts vagueness and overbreadth claims. *Id.* ¶¶ 125-62.

The three New College professors are: Sarah Hernandez ("Professor Hernandez"), a sociology professor, *id.* ¶ 23; Maribeth Clark ("Professor Clark"), a music professor, *id.* ¶ 26; and Kim Anderson ("Professor Anderson"), an art professor, *id.* ¶ 28 (collectively, the "Professor Plaintiffs"). The three New College students are: Sara Engles ("Engles"), an undergraduate majoring in Political Psychology/Health, Culture, and Societies and minoring in gender studies, *id.* ¶ 31; Carlton Leffler ("Leffler"), an undergraduate majoring Urban Studies and Chinese language, history, and culture, *id.* ¶ 32; and Shelby Nagle ("Nagle") an undergraduate majoring in "General Studies," *id.* ¶ 33, (collectively, the "Student Plaintiffs"). Finally, NCF Freedom, Inc. ("NCF Freedom") is a nonprofit organization that seeks to promote academic freedom at New College. *Id.* ¶ 17. All three Professor Plaintiffs and Engles are members of NCF Freedom. *Id.* ¶ 22.

On August 29, 2023, Plaintiffs moved for a preliminary injunction to enjoin enforcement of SB 266. ECF No. 5. Defendants filed their response in opposition (the "Response") on September 29, 2023. ECF No. 21. Plaintiffs filed their reply in support of their motion on October 10, 2023. ECF No. 22. That motion is scheduled for an in-person hearing on October 23, 2023.

## STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' Complaint for (a) lack of subject matter jurisdiction because Plaintiffs do not have standing to assert their claims, Fed. R. Civ. P. 12(b)(1); and (b) failure to state a claim upon which relief can be granted, Fed R. Civ. P. 12(b)(6).

Plaintiffs bear the burden of establishing subject matter jurisdiction, and if the Plaintiffs fail to shoulder that burden, the case must be dismissed. *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016). To survive a motion to dismiss, the "factual allegations 'must plausibly and clearly allege a concrete injury.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (quoting *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1620 (2020)). "[M]ere conclusory statements do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The court "will not 'imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none,' and [it is] powerless to 'create jurisdiction by embellishing a deficient allegation of injury.'" *Id.* at 925 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000)).

When a defendant challenges a complaint for failure to state a claim under Rule 12(b)(6), the court must accept the factual allegations—but not legal conclusions—as true and construe them in the light most favorable to the plaintiff. *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023). "The alleged facts, having been stripped of all legal conclusions, must make a claim for relief not merely *possible*, but *plausible*." *Id.* Further,

7

the court requires more than "labels and conclusions" for a plausible claim, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I.   Plaintiffs do not have standing to challenge SB 266.

Standing is an "irreducible constitutional minimum" and the party invoking federal jurisdiction bears the burden of establishing the three elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Courts considering whether a plaintiff has established standing must consider whether "(1) [] they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) can likely be redressed by a favorable ruling." *Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1282 (N.D. Fla. 2022) (citing *Lujan*, 504 U.S. at 560-61).

A defendant may move to dismiss a complaint under Rule 12(b)(1) for lack of standing by either facial or factual attack. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232–33 (11th Cir. 2008). A facial attack on the complaint challenges the allegations in the pleadings and requires the court to consider whether the plaintiff has sufficiently alleged standing; the allegations in the complaint are taken as true for the purposes of the motion to dismiss. *See id.* (quotation, citation, and alterations omitted). A factual attack on a complaint, on the other hand, "challenges

the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.*

Plaintiffs cannot survive either a facial or factual attack. Thus, in consideration of the Complaint and the declarations Plaintiffs filed in support of their Motion for Preliminary Injunction, Defendants assert both a facial and factual attack on Plaintiffs' standing. *See Warth v. Seldin*, 422 U.S. 490, 501–02 (1975); *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1072 (S.D. Fla. 2020) ("[W]hen a motion to dismiss presents both types of attacks, the plaintiff must overcome both in order for its claims to proceed.") (quoting *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 389 (D. Del. 2018)).

A. Plaintiffs cannot state an injury-in-fact as to any of the challenged provisions.

a. Plaintiffs are not injured by the Periodic Review Provisions.

Plaintiffs cannot show an injury-in-fact resulting from the Periodic Review Provisions because the Periodic Review Provisions do not place any restrictions on speech. The Board of Governors' mandate is clear—the Legislature seeks to ensure that each constituent university has a mission that is geared toward the academic success of its students; the economic development needs of the state; the national reputation of the faculty and academic and research programs; the generation of research, patents and licenses; and accountability plans to meet institutional system goals and objectives. § 1001.706(5)(a), Fla. Stat. As part of that effort the Board of Governors is expected

to review constituent university missions and consider existing academic programs for alignment with the mission, including providing a directive to each university regarding curricula that feature certain concepts. *See id.* The statute, therefore, does not mandate the exclusion of content but simply a review of content. *See id.* Allegations that the statute will result in censorship is mere speculation. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient.") (cleaned up). There are no speech or any other restrictions placed on Plaintiffs in this provision—and any future harm is speculative. Plaintiffs therefore cannot establish standing.

To the extent Plaintiffs argue this provision chills their speech, they fail to allege an objective chill sufficient to meet the actual or impending injury-to-plaintiff requirement. *See Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). The Periodic Review Provision requires simply that the Board of Governors review university missions and programs and issue unspecified directives following that review. *See* § 1001.706(5)(a), Fla. Stat. This is insufficient to establish objective chill.

In *Laird*, for example, the Supreme Court found that the "very existence" of an Army domestic data-gathering system did not produce a constitutionally impermissible chilling effect on the exercise of free speech rights. 408 U.S. at 13–14. The Supreme

Court explained that a litigant could not establish an injury based on a chilling effect that arose "merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual." *Id.* at 11.  Similarly, in *Link v. Diaz*, this Court found that claims of self-censorship due to a university survey were "not reasonable" because the fear of harm was too attenuated as it hinged on speculation. *See* No. 4:21CV271-MW/MAF, 2023 WL 2984726, at *7 (N.D. Fla. Apr. 17, 2023).

Moreover, Plaintiffs cannot allege a credible threat that this provision will be enforced against them because there is no enforcement mechanism in place—much less an enforcement mechanism to enforce this provision against Plaintiffs.  Since "no credible threat of prosecution looms, the chill is insufficient to sustain the burden that Article III imposes.  A party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable." *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998).

Plaintiffs' subjective allegations of chill are insufficient to support an injury-in-fact. *Id.*  Thus, Plaintiffs lack standing to challenge the Periodic Review Provision.

b.  <u>Plaintiffs are not injured by the Funding Provisions.</u>

Plaintiffs also cannot show an injury-in-fact resulting from the Funding Provisions because, as shown in the Response, they only apply to how courses are

classified within the academic programs. ECF No. 21 at 16-18. Thus, professors can still teach and students can still take courses that include the controversial topics as electives. *Id.* Defendants incorporate herein their Funding Provision arguments from the Response. *Id.*

      c.  <u>Plaintiffs are not injured by the General Education Provisions.</u>

Similarly, Plaintiffs cannot show an injury-in-fact resulting from the General Education Provisions because, as shown in the Response, Plaintiffs have no cognizable legal interest in whether the courses they teach or take are classified as "general education core courses." ECF No. 21 at 19-20. Defendants incorporate herein their General Education Provision arguments from the Response. *Id.*

    **B.**  <u>Plaintiffs cannot establish traceability and their alleged injuries are not redressable by an injunction against SB 266.</u>

Plaintiffs cannot establish the traceability and redressability requirements of the standing doctrine as to any of the challenged provisions because none of the challenged provisions are enforced against Plaintiffs and the university has held and continues to maintain discretion to make funding decisions and change course offerings over Plaintiffs' objections. ECF No. 21 at 20-26. Defendants incorporate herein their traceability and redressability arguments as applied to all the challenged provisions from the Response. *Id.*

    **C.**  <u>Plaintiffs have not alleged that they would violate any of the provisions they challenge.</u>

Even if SB 266 could be construed to restrict Plaintiffs' speech in a manner traceable to Defendants' enforcement authority and could be redressed by an injunction, Plaintiffs have neither alleged facts nor presented evidence to the Court sufficient to meet their burden of showing an actual, imminent injury resulting from SB 266.

To establish standing, a party "must demonstrate standing for each claim [the plaintiff] seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). "That a plaintiff has standing to bring one claim does not save another claim for which he does not; 'standing is not dispensed in gross.'" *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). So, a plaintiff must establish standing for each provision of SB 266 they challenge. *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271–72 (11th Cir. 2006). The allegations necessary for a plaintiff to establish standing when seeking prospective relief, as is the case here, requires him to "'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.' And that future injury must be "real," "immediate," and "definite." *Id.* at 1357 (11th Cir. 2021) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346-47 (11th Cir. 1999)). Further, a plaintiff can plead a pre-enforcement challenge, when he "'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution[.]'" *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017).

### a. *Professor Hernandez*

Professor Hernandez has neither alleged nor presented sufficient evidence to the Court to establish that she will suffer an actual, imminent injury as a result of SB 266's implementation.  Defendants incorporate herein their arguments regarding Professor Hernandez's lack of standing from the Response.  ECF No. 21 at 29-33.

### b. *Professor Clark*

Professor Clark has also neither alleged nor presented sufficient evidence to the Court to establish that she will suffer an actual, imminent injury as a result of SB 266's implementation.  Defendants incorporate herein their arguments regarding Professor Clark's lack of standing from the Response.  ECF No. 21 at 33-35.

### c. *Professor Anderson*

Professor Anderson submitted a declaration in support of her allegations as part of Plaintiffs' Reply in Support of Motion for Preliminary Injunction.  ECF No. 22-1 ("Anderson Decl.").  Nevertheless, she too has neither alleged nor presented sufficient evidence to the Court to establish that she will suffer an actual, imminent injury as a result of SB 266's implementation.  First, Professor Anderson alleges that her salary and tenure are in jeopardy because SB 266 prohibits the funding of certain concepts which are an "integral" part of her instruction. ECF No. 1 at ¶ 93(C)(1).  But Professor Anderson does not indicate what concepts she intends to teach, what courses she intends to teach them in, and whether those courses would be general education classes

or optional electives.  *See id.*  Thus, her claim cannot support an expected violation of the statute.

The closest allegation to bringing Professor Anderson's activities within the ambit of SB 266 is that she will be teaching two general education courses: "Principles of Painting" and "Perceptual Drawing Methods" in Fall of 2023.  Anderson Decl. ¶ 13. Her allegation, however, fails to allege a violation of § 1004.06(2)(b) because the statute only applies to advocacy for DEI and social and political activism; Professor Anderson does not allege that she plans to advocate for these principles, but instead claims that she will "touch on" and "reflect upon" them.  *Id.*

Professor Anderson's allegations similarly fail to show that she plans to violate § 1007.25(3)(c).  She alleges simply that she "fears" her material is "associated with 'identity politics' 'systemic racism' and 'sexism,'" which is insufficient to violate the statute.  *Id.* ¶ 13.  Moreover, her allegation is wholly conclusory; she alleges no facts sufficient to support an inference that she plans to violate § 1007.25(3)(c).  Additionally, Professor Anderson alleges that her instruction "may be considered to be 'unproven,' 'speculative and exploratory'" content under § 1007.55(1).  *Id.* ¶ 13.   Here too, her allegation is pure conclusion unsupported by fact and insufficient to sustain her standing.

Professor Anderson's other allegations similarly fail to show an expected violation of SB 266 and hinge on purely conclusory claims.  For example, she concludes her instruction will have to be curtailed or eliminated to comply with § 1000.05, as it

involves "advocacy for DEI and social and political causes," and could be perceived as advancing critical race theory and similar concepts. *Id.* at ¶ 7. Fatal to Professor Anderson's standing effort is that she alleges no planned instruction that would constitute advocacy for DEI or social and political causes; her allegation is wholly conclusory. *See id.*

Professor Anderson also believes that SB 266 will limit her ability to properly educate her students within the curriculum because it "eliminates all discussion . . . [of] the observation that women and minorities" are underrepresented in the arts. *Id.* ¶ 3. [1] But SB 266 does not prohibit discussions of underrepresentation. She also claims that she "routinely" uses artists' personal histories in her teaching and believes that she will need to self-censor to avoid implicating "concepts, theories, and viewpoints outlawed by SB 266." *Id.* at ¶ 8. Here, Professor Anderson fails to offer details related to her lessons and how those lessons might violate the challenged provisions of SB 266. *See id.* She also alleges that SB 266 will result in the cancellation of courses or denial of course credit for upper-level students' independent study programs. *Id.* But she makes no allegations connecting such cancellations to any injury she might sustain herself. She also believes that a mural her students painted was destroyed this summer because it depicted themes that conflicted with DEI and other restrictions, however she makes

---

[1] The Declaration contains two ¶ 3s due to an apparent scrivener's error.

no plausible allegations connecting the mural destruction to the proscriptions in SB 266. *Id.* at ¶¶ 11-12.

Further, Professor Anderson admits that she is "deeply uncertain" about whether her teaching would even fall under the Act as "advocat[ing] for diversity, equity, and inclusion." *Id.* ¶ 14(B). Like her colleagues, Professor Anderson says that "it is inevitable" her instruction will include discussions based on theories of systemic oppression within the institutions of the United States—but she provides no context or information sufficient to gauge the claimed "inevitab[ility]." *Id.* ¶ 14(F). Professor Anderson explains that her discussions may "touch on 'identity politics'" but she does not explain how. *Id.* ¶ 14(E). She also fails to indicate what content might be considered "unproven, speculative, or exploratory" or a distortion of history such that her teaching could fall under the statute—or even whether those teachings would be part of a general education course. *Id.* ¶ 14(D), (G). Indeed, none of Professor Anderson's attestations or allegations provide an intent to engage in a course of conduct that might be impacted by SB 266 in a way that could violate her constitutional rights.

Even if Professor Anderson had sufficiently alleged an expected violation of SB 266, she still lacks standing because, as argued earlier, none of the provisions of SB 266 will be enforced against her to injure her in a legally significant way. *See supra* Section I.A.-B. Thus, Professor Anderson fails to allege sufficient facts demonstrating standing to challenge any of the provisions in SB 266.

### d.  Engles (Student)

Engles has neither alleged nor presented sufficient evidence for the Court to establish that she will suffer an actual, imminent injury as a result of SB 266's implementation.  Defendants incorporate herein their arguments regarding Engles' lack of standing from the Response.  ECF No. 35-37.

### e.  Leffler (Student)

Leffler has neither alleged nor presented sufficient evidence to the Court to establish that she will suffer an actual, imminent injury as a result of SB 266's implementation.  Defendants incorporate herein their arguments regarding Leffler's lack of standing from the Response.  ECF No. 21 at 37-29.

### f.  Nagel (Student)

Nagel has not presented any evidence of her standing.  Nevertheless, her allegations fail to establish that she will suffer an actual, imminent injury as a result of the challenged provisions of SB 266.  Nagel alleges that she will be taking four classes in Fall of 2023, only one of which—"Perceptual Drawing Methods"—is alleged in the Complaint as being a general education course.  ECF No. 1 ¶ 93F.(2).  But Nagel offers no details about the "Perceptual Drawing Methods" curriculum to establish in a nonconclusory way that the concepts advanced in the course would violate any of SB 266's provisions, much less the General Education Provisions.  She alleges further that her "Introduction to Sociology" court will be "severely hampered" by §1004.06(2)(a) and (2)(b) and Section 9, §1007.25(3)(c) of SB 266.    ECF No. 1 ¶ 93F.(2).(a).

Defendants noted in their Response that "Introduction to Sociology" appears to be a general education course.  *See* ECF No. 21 at 30-31.  Nagel, however, offers only vague references to subjects that "Introduction to Sociology" will consider, explaining that a sociology course needs to examine all aspects of human culture including "DEI, social and political activism, identity politics, racial and gender discrimination, and the role society plays in the propagation of those practices."  ECF No. 1 ¶ 93F.(2)(a).  But Nagel does not allege how these topics would factor into the curriculum such that the course teachings would be "based on" the controversial "theories that systemic racism, sexism, oppression, and privilege are inherent in the institutions of the United States and were created to maintain social, political, and economic inequities."  § 1007.25(3)(c), Fla. Stat.  Or how the teaching of these concepts would constitute "*advocating*" for DEI, or "*promot[ing]* or *engag[ing]*" in political or social activism."  § 1004.06(2)(b), Fla. Stat. (emphasis added).

Further, Nagel alleges that her "Psychology of Religion" class will be subject to censorship, but there are no allegations that the "Psychology of Religion" class is a general education course such that its teachings could run afoul of the General Education Provisions.  *See* § 1007.25(3)(c), Fla. Stat.  Additionally, the examples she cites are mere speculation regarding possible, hypothetical teachings, rather than an allegation that these lessons actually will be a feature of the class.  Her examples also fall short of teachings that would constitute advocacy for DEI or promotion and engagement in activism.  *See* § 1004.06(2)(b), Fla. Stat.

Nagel does not allege facts sufficient to establish standing to challenge any of the provisions in SB 266.

> g.   *NCF (Association)*

NCF has neither alleged facts nor presented sufficient evidence to establish that it will suffer an actual, imminent injury as a result of SB 266's implementation. Defendants incorporate herein their arguments regarding NCF's lack of standing from the Response.  ECF No. 21 at 39-40.

Ultimately, none of the seven plaintiffs can establish standing because they have failed to allege sufficient facts or present evidence showing an actual, imminent injury.

## II.   Plaintiffs Fail to State a Claim as to Count I.

Plaintiffs fail to state a First Amendment claim for relief because the provisions of SB 266 (1) regulate government speech and do not implicate Plaintiffs' speech rights and (2) satisfy the controlling test laid out in *Bishop v. Aronov*, 926 F.2d 1066, 1075 (1991).  ECF No. 21 at 40-68.  Defendants incorporate herein their First Amendment legal arguments from the Response as applied to all the challenged provisions.  *Id.*

## III.   Plaintiffs Fail to State a Claim as to Count II.

Plaintiffs fail to state a claim for constitutional vagueness because (1) Plaintiffs' claim is not ripe and (2) the provisions of SB 266 are easily construed via reference to ordinary and well-known meaning.  ECF No. 21 at 69-83.  Defendants incorporate herein their vagueness legal arguments from the Response as applied to all the challenged provisions.  *Id.*

**IV.    Plaintiffs Fail to State a Claim as to Count III.**

Plaintiffs fail to state a claim for constitutional overbreadth.  The Supreme Court has recognized the overbreadth doctrine is "strong medicine" that should be employed "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). To survive a motion to dismiss, Plaintiffs must plead sufficient facts to show that "a substantial number of [the Act's] applications are unconstitutional[ ] [when] judged in relation to [their] plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citation omitted).  They state a claim only if the Act is "not readily subject to a narrowing construction by the state courts, and its deterrent effect on legitimate expression is both real and substantial." *Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 358 (8th Cir. 2020) (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)).  The Supreme Court has explained that "[e]ven where a statute at its margins infringes on protected expression, facial invalidation is inappropriate if the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . . .'" *Osborne v. Ohio*, 495 U.S. 103, 112 (1990) (internal citations and quotation marks omitted).

Here, Plaintiffs make no allegations identifying protected speech that would be targeted, much less targeted by a substantial overreach of the Act's application.  They have not alleged from the text or actual fact that substantial overbreadth exists and so cannot sustain a challenge. *See Doe v. Valencia Coll.*, 903 F.3d 1220, 1232–33 (11th Cir. 2018).

Regardless, this challenge is premature, as the statute provides that the Board of Governors is to adopt a regulation to implement the relevant provisions.  *See supra* Section III (incorporating the Response's ripeness arguments).  This implementation will dispel concerns of a chilling of speech.  Even if Plaintiffs could identify protected speech that SB 266 might implicate beyond its permissible scope, the mere speculation that a statute may be impermissibly applied is insufficient to sustain an overbreadth challenge.  *Taxpayers for Vincent*, 466 U.S. at 800.  Further, the application must also be "realistic."  *See New York State Club Assn., Inc. v. City of New York*, 487 U.S. 1, 11 (1988) (citation omitted).  Plaintiffs have made no realistic allegation of unconstitutional application or alleged in a non-conclusory fashion that a substantial number of the Act's applications are unconstitutional.  Thus, Plaintiffs have failed to demonstrate a likelihood of success on their overbreadth claim.

## V.   <u>Plaintiffs Fail to State a Claim as to Count IV</u>.

Plaintiffs allege that SB 266's exemption for certain categories of student organizations and student programs, §§ 1004.06(2), (3), Fla. Stat., constitutes an equal protection violation.  Section 1004.02(2) provides that student fees are permitted to support student-led organizations that would otherwise violate the prohibitions on the State's funding of activities, so long as those organizations act pursuant to each university's written policies or regulations.  Section 1004.06(3) provides a similar exclusion, allowing funding for programs, campus activities, or functions that would otherwise violate the Funding Provisions if they are required for compliance with the

law; to retain discipline-specific accreditation; and "for access programs for military veterans, Pell Grant recipients, first generation college students, nontraditional students, '2+2' transfer students from the Florida College System, students from low-income families, or students with unique abilities."

"The central mandate of the equal protection guarantee is that '[t]he sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective.'" *Lofton v. Sec'y of Dep't of Child. & Fam. Servs.,* 358 F.3d 804, 817 (11th Cir. 2004) (quoting *Lehr v. Robertson,* 463 U.S. 248, 265 (1983). Legislative classifications are not forbidden under the Equal Protection clause, and "[u]nless the challenged classification burdens a fundamental right or targets a suspect class, the Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest." *Id.*

Defendants frame their equal protection claim as a violation of fundamental rights entitled to heightened scrutiny. However, as argued in Sections II-IV, SB 266 does not have an impact on Defendant's free speech rights and does not otherwise bear on Defendants' fundamental rights. Furthermore, the provisions being challenged by Plaintiffs' equal protection claim—the exceptions to the Funding Provisions—are completely neutral with respect to speech or any other fundamental right. They do not regulate speech at all. They merely exempt student organizations and student programs from the Funding Provisions. Since the Funding Provisions, especially the exceptions, do not single out a suspect class or impinge on a fundamental right, the challenged

provisions are entitled to rational basis review. *Thornton v. Hunt,* 852 F.2d 526, 527 (11th Cir. 1988); *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1338 (11th Cir. 2002) (nude dancing ordinance did not infringe on dancer's freedom of association or freedom of movement and thus her equal protection claim was entitled to rational basis review).

"A statute is constitutional under rational basis scrutiny so long as "there is *any reasonably conceivable state of facts* that could provide a rational basis for the" statute. *Williams v. Pryor,* 240 F.3d 944, 948 (11th Cir. 2001) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993)). Under this deferential standard almost every statute is found to be constitutional. *Id.* Additionally, because courts do not require a legislature to state the reasons for enacting a statute, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *F.C.C. v. Beach Commc'ns, Inc.,* 508 U.S. 307, 315 (1993). This means that a legislative enactment "may be based on rational speculation unsupported by evidence or empirical data." *Id.* Moreover, courts "must give great deference to the Florida Legislature because lawmakers are presumed to have acted constitutionally 'despite the fact that, in practice, their laws result in some inequality.'" *Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1545 (11th Cir. 1994).

The State has a legitimate interest in allowing its universities and colleges to set their own policies consistent with regulatory mandates. Providing an exception that allows universities and colleges to set written policies to allocate public funds to student-led organizations is rationally related to the State's legitimate interest in providing some

24

institutional autonomy within the strictures of established rules.  Furthermore, students are not employees of the universities or colleges and would normally not be speaking on behalf of the institution.  The Legislature has a rational basis to avoid any possibility that SB 266 could be interpreted to deny public funds to student organizations who have a constitutional right to speak on their own behalf.  *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 830–37 (1995).

The State also has a legitimate interest in complying with general and federal laws and regulations and ensuring that disciplines that require accreditation maintain their credentialing—such that the State can continue to receive federal funding and maintain program value.  So, providing an exemption to the prohibition on funding advocacy for DEI and other controversial concepts in those limited circumstances is rationally related to the legitimate state interest of complying with applicable law and maintaining program credentials.

The State also has a legitimate interest in facilitating access programs for military veterans, Pell Grant recipients, first generation college students, nontraditional students, "2+2" transfer students from the Florida College System, students from low-income families, and students with unique abilities to help ensure they continue their efforts toward educational attainment.  These students typically face unique challenges as they work to achieve post-secondary degrees.  Exempting access programs for these students from the funding prohibitions in SB 266 ensures that universities and colleges will continue to provide support and access to these programs regardless of SB 266.

Therefore, the exemption is rationally related to a legitimate state function of educational access, and Plaintiffs fail to state an equal protection claim.

## CONCLUSION

Plaintiffs have neither established standing nor stated a claim sufficient to challenge SB 266. For the foregoing reasons, Plaintiffs' Complaint respectfully should be dismissed.

Dated: October 20, 2023

Respectfully Submitted,

*/s/ William S. Galvano*
William S. Galvano (FBN: 966487)
Chadwick A. Manausa (FBN: 1039266)
Gianna M. Tomeo (FBN: 1049538)
**Grimes Hawkins Gladfelter & Galvano P.L.**
1023 Manatee Avenue W.
Bradenton, Florida 34205-7816
941-748-0151
bgalvano@grimesgalvano.com
cmanausa@grmiesgalvano.com
gtomeo@grimesgalvano.com
kmorrissey@grimesgalvano.com
aduckett@grimesgalvano.com

*Counsel for Defendants, CHRISTOPHER RUFO, DEBRA A. JENKS, AMY REID, CHARLES R. KESLER, LANCE KARP, MARK BAUERLEIN, MATTHEW SPALDING, RYAN T. ANDERSON, SARAH MACKIE, GRACE KEENAN, JOE JACQUOT and RON CHRISTALDI, in their official capacities as members of the New College of Florida Board of Trustees, and RICHARD*

*/s/ Raymond F. Treadwell*
Jason B. Gonzalez (FBN: 146854)
Raymond F. Treadwell (FBN: 93834)
Amber Stoner Nunnally (FBN: 109281)
Caroline May Poor (FBN: 1018391)
**Lawson Huck Gonzalez, PLLC**
215 South Monroe Street, Suite 320
Tallahassee, Florida 32301
850-825-4334
jason@lawsonhuckgonzalez.com
ray@lawsonhuckgonzalez.com
amber@lawsonhuckgonzalez.com
caroline@lawsonhuckgonzalez.com
stephanie@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com
marsha@lawsonhuckgonzalez.com

*Counsel for Defendants MANNY DIAZ, JR., in his official capacity as the Commissioner of the Florida State Board of Education and member of the Florida Board of Governors; TIMOTHY M. CERIO, AUBREY EDGE, PATRICIA FROST, EDWARD HADDOCK, JACK HITCHCOCK, KEN JONES, DARLENE LUCCIO JORDAN, BRIAN LAMB, ALAN LEVINE, CHARLES H. LYDECKER,*

| | |
|---|---|
| CORCORAN, *in his official capacity as Interim President of New College of Florida* | *CRAIG MATEER, JOSE OLIVA, and ERIC SILAGY in their official capacities as members of the Florida Board of Governors of the State University System* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed

with the CM/ECF website and served on October 20, 2023 to all counsel of record.

/s/ Raymond F. Treadwell
Attorney

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that the foregoing motion, including body, headings,

quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F),

contains 6,170 words as measured by Microsoft Word.

/s/ Raymond F. Treadwell
Attorney